```
 1
 2
 3
 4
 5
 6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
 7                              AT TACOMA
```

| | | |
|---|---|---|
| JAMES EDWARD CURTIS, | | NO. C08-5109 BHS/KLS |
| | Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | | **NOTED FOR: JULY 23, 2010** |
| TERRY J. BENDA and WILLIAM E. RILEY, | | |
| | Defendants. | |

Before the court is Defendants Benda and Riley's Motion for Summary Judgment Based on Absolute Immunity and Defendant Benda's Motion for Summary Judgment Based on Qualified Immunity. Dkt. 82. Having reviewed the motion, Plaintiff's opposition (Dkt. 111), Defendants' reply (Dkt. 113), and supporting affidavits and evidence, the undersigned finds that the motion should be denied as to absolute immunity, but that Plaintiff's claims against Defendant Terry J. Benda should be dismissed because Defendant Benda is entitled to qualified immunity. Defendant William E. Riley did not move for summary judgment based on qualified immunity.

*FACTS*

On October 13, 2002, Plaintiff James Edward Curtis, a white male, along with another white male inmate (Steven Eggers), assaulted James Wilkinson, a fellow inmate, who is an

REPORT AND RECOMMENDATION                                                  1

African-American male. Dkt. 44, pp. 8-9 (Plaintiff's Amended Complaint). A criminal information was filed on December 3, 2004, which charged Mr. Curtis with second degree assault while armed with a deadly weapon, with alleged aggravating circumstances that the crime was gang-related and/or racially motivated. Dkt. 112-19, p. 7. Defendant Benda conducted the investigation into the assault, in conjunction with the Clallam County Prosecutor's Office. He provided his investigative report to the Clallam County Sheriff's Office (Dkt. 44, pp. 90-93) and a signed declaration in support of probable cause to the Clallam County Prosecutor's Office. Dkt. 112-19, p. 3. Defendant Riley also provided a written statement to the Clallam County Sheriff's Office, which Mr. Curtis asserts falsely connected Mr. Curtis with the Aryan Family gang. Dkt. 44, pp. 84-85. Based on the information gathered in the investigation, Mr. Benda believed the assault was racially-motivated and gang-related. *Id.*, p. 95. All charges against Mr. Curtis were subsequently dropped by the Clallam County Prosecutor's Office on September 8, 2005. Dkt. 26, p. 7.

Mr. Curtis admits that he assaulted Mr. Wilkinson, an African-American inmate. Dkt. 44, pp. 7-8. However, he asserts that the assault was not gang related and that it was not racially motivated and therefore the assault charge against him should not have included the alleged aggravating circumstances. He therefore does not assert that he is innocent of the assault. Rather, he alleges that Mr. Benda and Mr. Riley fabricated evidence during their investigation, which evidence was used to support the inclusion of the aggravating circumstances of the assault charge. If the aggravating circumstances had been proven at trial, Mr. Curtis could have been subjected to a harsher sentence than that allowed by the standard sentencing range.

Mr. Curtis submitted a 120 page response (Dkt. 111) and a 32 page declaration (Dkt. 112) in opposition to the Defendants' motion.  The court has carefully reviewed Mr. Curtis' pleadings.  To summarize, Mr. Curtis asserts that Mr. Benda coerced other inmates to provide false statements regarding the assault incident, which false statements were then used to support Mr. Benda's conclusion that the assault by Mr. Curtis was racially motivated and/or gang related.  Mr. Curtis also goes to great lengths to support his conclusions that Mr. Benda fabricated most, if not all, of his investigative report.  For instance, the report contains a summary of how Mr. Curtis obtained the weapon he used to assault Mr. Wilkinson from an inmate named Anderson.  Mr. Curtis denies that he obtained the weapon from inmate Anderson but rather states that he received it from inmate Eggers, his co-defendant in the assault case.  There is no dispute, however, that Mr. Curtis used a weapon when he assaulted Mr. Wilkinson and the person who supplied him with the weapon is not material as to whether the assault was racially motivated or gang related.

He also asserts that Mr. Benda doctored some photographs which showed initials cut into Mr. Wilkinson's back.  The initials were "AF" and Mr. Curtis concluded that they represented Aryan Family.  There is no dispute that both the "A" and the two parallel lines of the letter "F" were visible in the pictures taken shortly after the incident as well as the pictures showing the scarring on Mr. Wilkinson's back.  Mr. Curtis does raise an issue regarding the vertical line in the letter "F."  Dkt. 112, p. 27.  He states that the pictures he has seen showing scarring on Mr. Wilkinson's back do not show the vertical line.  He then infers that since the vertical line was not visible in the scarring that it must not have been there when the pictures were taken of Mr. Wilkinson's back shortly after the incident.  He then concludes that the

vertical line shown in the initial photos must have been put there by Mr. Benda. The court notes that Mr. Curtis is not accused of cutting the letters into the victim's back. Rather, Mr. Eggers, who was also charged with Mr. Curtis, is the one who did the cutting. In that regard, Mr. Curtis denies knowing that Mr. Eggers was going to participate in the assault on Mr. Wilkinson and denies directing Mr. Eggers to do anything specific with regard to Mr. Wilkinson, i.e., cut initials into his back. Dkt. 112, pp. 17-18.

Mr. Curtis alleges that Defendant Riley obtained a personal letter that Mr. Curtis "reportedly wrote to a friend (i.e., Larry Kisinger)" that ended with the closing, "Always & Forever," and that Defendant Riley then coerced several known Aryan Family members, who are also controlled informants, to write and close their letters using the words "Always & Forever." Dkt. 44-2, pp. 32-34. According to Mr. Curtis, Defendant Riley then referenced this "fabricated evidence" of Mr. Curtis' gang affiliation in a written statement he provided to the Clallam County Sheriff's Office. *Id.*, p. 35.

*SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there exists "no genuine issue as to any material fact" such that the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts

1  demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the
2  existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of
3  evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on
4  summary judgment, the court does not weigh evidence to determine the truth of the matter, but
5  "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d
6  547, 549 (9th Cir. 1994).

*DISCUSSION*

A.   *Absolute Immunity*

Defendants Benda and Riley first argue that they are entitled to absolute witness immunity for their "out-of-court testimony."  Dkt. 82, p. 4.  The undersigned concludes that such immunity is inapplicable to the written statements provided by Defendants Benda and Riley to the Clallam County Sheriff's Office and Clallam County Prosecutor's Office.

The Supreme Court has extended absolute immunity to testifying witnesses, which would include the Defendants, at judicial proceedings.  *Briscoe v. LaHue*, 460 U.S. 325, 333, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).  It reasoned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce ... self-censorship," either by making witnesses reluctant to come forward in the first place or by distorting their testimony.  *Id*.  Such self-censorship may "deprive the finder of fact of candid, objective, and undistorted evidence."  *Id*.  This immunity, however, does not extend to the intentional or reckless pretrial fabrication of evidence.  *Paine v. City of Lompoc,* 265 F.3d 975, 981 (9th Cir.2001) (noting that absolute immunity "does not shield non-testimonial conduct .... [P]olice officers ... obviously enjoy no immunity for non-testimonial acts such as fabricating evidence.") (internal

1   quotations and citations omitted); *Cunningham v. Gates*, 229 F.3d 1271, 1291 (9th Cir.2000)

2   (holding that "testimonial immunity does not encompass non-testimonial acts such as

3   fabricating evidence").[1]

4   As noted above, Defendant Benda conducted the investigation into the assault.  He

5   provided his investigative report to the Clallam County Sheriff's Office, and a declaration in

6   support of probable cause to the Clallam County Prosecutor's Office.  Dkt. 44, pp. 90-93.

7   Defendant Riley provided a statement to the Clallam County Sheriff's Office.  *Id.*, pp. 84-85.

8   Defendants argue that as a witness to the aftermath of Mr. Curtis's crime, Defendant

9   Benda is clearly entitled to absolute witness immunity for his out-of-court statements, and that

10  Defendant Riley was a declaring witness when he provided his out-of-court statement to the

11  Clallam County Sheriff's Office.  Dkt. 82, p. 5.  However, it is clear that Defendants'

12  statements were non-testimonial, non-adversarial pretrial acts and thus, are not covered by the

13  immunity extended to witnesses at trial.  In addition, Mr. Curtis seeks to impose liability

14  arising from the alleged fabrication of evidence itself and its pretrial effect on the prosecutor's

15  decisions about what charges to advance at trial.  See *Castellano v. Fragozo*, 352 F.3d 939,

16  958 n. 107 (5th Cir.2003) ("Defendants cannot shield any pretrial investigative work with the

17  aegis of absolute immunity merely because they later offered the fabricated evidence or

---

[1] Courts in other circuits reached the same conclusion.  See *Gregory v. City of Louisville*, 444 F.3d 725, 738-39 (6th Cir.2006) ("Subsequent testimony cannot insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence. Merely because a state actor compounds a constitutional wrong with another wrong which benefits from immunity is no reason to insulate the first constitutional wrong from the actions for redress. Non-testimonial, pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony.") (citation omitted); *Pierce v. Gilchrist*, 359 F.3d 1279, 1300 (10th Cir.2004) (holding that action could proceed against a forensic hair examiner accused of intentionally or recklessly falsifying her investigative report and recording a "match" when one did not exist); *Keko v. Hingle*, 318 F.3d 639, 644 (5th Cir.2003) (declining to extend absolute immunity to a forensic examiner who allegedly falsified a forensic report).

REPORT AND RECOMMENDATION                                                      6

testified at trial."); *Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir.2002) (holding that a municipal officer's verbal fabrications as told to a state trooper and to prosecutors were not entitled to absolute immunity, despite the officer's consistent testimony with these fabrications at the plaintiff's later criminal proceedings).

Accordingly, the undersigned concludes that Defendants are not entitled to absolute immunity stemming from their non-testimonial statements and recommends that their motion for summary judgment on this ground be denied.

*B.     Qualified Immunity*

The court turns next to whether Defendant Benda[2] is entitled to qualified immunity based on Plaintiff's contention that he is asserting only "fabrication-of-evidence claims pursuant to the constitutional standards delineated in *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)"[3].

> To decide whether a defendant is protected by qualified immunity, a court must first determine whether, "[t]aken in the light most favorable to the party asserting injury, … the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 2156 [*Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001)]. If the plaintiff's factual allegations do add up to a violation of the plaintiff's federal rights, then the court must proceed to determine whether the right was "clearly established[.]"
>
> …
>
> In essence, at the first step, the inquiry is whether the facts alleged constitute a violation of a plaintiff's rights. If they do, then, at the second step, the question

---

[2] Although both Defendants Benda and Riley moved for summary judgment based on absolute immunity, only Defendant Benda moved for summary judgment based on qualified immunity. Dkt. 82, p. 2.

[3] In his response, Mr. Curtis states that "the right at issue here is the due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government, pursuant to the constitutional standards delineated in Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001)."

1 |     is whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights.

*Devereaux v. Abbey, supra*, at p. 1074.

    Defendant Benda is entitled to qualified immunity if it would not have been clear to a reasonable official in his position that his conduct was unlawful. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (holding that qualified immunity shields § 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citing *Harlow*, 457 U.S. 800, 818 (1982)). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004).

    Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. *Id*. at 648. The qualified immunity doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

REPORT AND RECOMMENDATION    8

Because qualified immunity is an immunity from suit rather than a defense to ultimate liability, it should ordinarily be decided by the court "long before trial." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir.1993). The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct. If the plaintiff meets this burden, the defendants must prove that their conduct was reasonable even though it might have violated constitutional standards. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991).

Before determining whether an officer is entitled to qualified immunity, a court must first consider whether a constitutional right was violated. *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*.

There is a "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001). Under the Fourteenth Amendment, there exists a "right not to be deprived of liberty without due process of law, or more specifically, as the result of the fabrication of evidence by a government officer acting in an investigative capacity." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir.2004); see also *Zahrey v. Coffey*, 221 F.3d 342, 349 (2nd Cir.2000) (recognizing a constitutional right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."); *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir.1997) (holding that constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have

affected the decision of the jury); cf. *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir.1997) ( "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial ....").

In order to support a claim for deliberate fabrication of evidence, a plaintiff must, at a minimum, produce evidence that supports one of the following propositions: (1) the defendants continued their investigation of an individual despite the fact that they knew or should have known he was innocent; and (2) defendants used investigative techniques that were so coercive and abusive that they knew or should have known those techniques would yield false information. *Devereaux*, 263 F.3d at 1076.

With regard to the first proposition, it is undisputed that Mr. Curtis did, in fact, assault Mr. Wilkinson with a weapon in Mr. Wilkinson's cell. Mr. Curtis admits to the assault and this is corroborated by other witnesses, including the victim.[4] Mr. Curtis does assert that he was forced to commit this assault based on threats made against him by Mr. Eggers, his co-defendant in the state case. That assertion, however, does not infer innocence but rather is a legal defense. Mr. Curtis has presented no evidence to support the conclusion that Defendant Benda continued his investigation despite the knowledge that Mr. Curtis was innocent.

---

[4] The victim, Mr. Wilkinson subsequently sued the Department of Corrections for failing to protect him from the assault. See *Wilkinson v. Eldon Vail, et al.*, Cause No. C05-5656JKA. In that lawsuit, Mr. Wilkinson alleged that on October 13, 2002, two inmates from Clallam Bay Corrections Center entered his cell, closed the door behind them, and attacked him with a metal chair handle that had been sharpened into a dagger-like implement and with a razor blade that had been attached to a toothbrush handle. Dkt. 6, p. 7. He further alleged that his assailants used the razor to carve racially degrading symbols into his back and that the assault was racially motivated. *Id.*

1    Rather, it appears that Mr. Curtis is focusing on the second proposition, that Mr.
2  Benda used "investigative techniques that were so coercive and abusive" that he knew or
3  should have known those techniques would yield false information.
4    Plaintiff alleges, based on his own "information and belief," that Defendant Benda
5  coerced testimony from witnesses, made "deals" with violent offenders so they would testify
6  against Plaintiff, lied about staff statements, falsified witness statements, coerced the victim of
7  the assault to lie about the Plaintiff, smeared blood on the walls of the victim's cell, dipped the
8  Plaintiff's t-shirt in blood, and, "doctored" the letters carved into the victim's back during the
9  attack by completing the letter "F" in red ink. *See, e.g.,* Dkt. 44, pp. 14, 16, 17, 30-34, 45, 53,
10 57, 60-63, 68-69 and 71-73.
11   In his declaration, Mr. Curtis admits that he assaulted Mr. Wilkinson, but denies doing
12 so because Mr. Wilkinson "snitched on a white boy" and he denies calling Mr. Wilkinson a
13 nigger. Dkt. 112, pp. 17-18; p. 30. Mr. Curtis also denies that he is a racist or member of the
14 Aryan Family, that he discussed his plan to assault Mr. Wilkinson with other inmates, that he
15 planned a diversion, and that he received the metal chair handle that he used as a weapon in
16 the assault from inmate Anderson. *Id.*, pp. 20-22. Mr. Curtis states that Mr. Eggers provided
17 him with the metal chair handle, which Mr. Curtis sharpened on his cell floor while Mr.
18 Eggers kept a look out for staff. *Id.*, pp. 12-15. In support of this latter claim, Mr. Curtis
19 submits the affidavit of inmate Anderson, who states that he did not give the metal chair
20 handle to Mr. Curtis. Dkt. 112-18, pp. 27-30. Mr. Curtis also submits affidavits of six
21 inmates who state that Mr. Curtis is not a racist or member of the Aryan Family/Security
22 Threat Group or other racial group. Dkt. 112-2, pp. 28-35; Dkt. 112-3, p. 49; Dkt. 112-19, pp.

32-45 (Sterling Jarnagin, Derek T. Correa, Sr., Daniel Jolliffe, Julian Rangel, Marvis Knight and David Davison).  Mr. Curtis also submits the affidavit of inmate Davison, who disputes that many statements attributed to him by Mr. Benda in Mr. Benda's report are true.   In particular, he denies telling Mr. Benda that Mr. Curtis was a member of the Aryan Family.  Dkt. 112-19, p. 33.

Mr. Curtis explains in his affidavit that he had to take care of Mr. Wilkinson because Mr. Wilkinson was attempting to involve Mr. Curtis in a drug deal, which Mr. Curtis believed was an attempt "by CBCC investigators to entrap [him] in a conspiracy."  Dkt. 112, p. 9.  Mr. Curtis also states that inmate Eggers forced him to physically assault Mr. Wilkinson by threatening to do bodily harm to Mr. Curtis.  *Id.*, p. 11.

Mr. Curtis denies any foreknowledge of Mr. Eggers's intent to physically participate in the altercation, denies that he ever told Mr. Eggers to do anything to Mr. Wilkinson, and that during the fight, it was Mr. Eggers who cut Mr. Wilkinson in the back.  Mr. Curtis also denies ever telling Mr. Wilkinson that Mr. Curtis was attacking him "for telling on a white boy, nigger."  *Id.*, pp. 17-18.

Based on Mr. Curtis's examination of the evidence submitted in his criminal case, he states that the button-up shirt reportedly worn by Mr. Wilkinson during the assault was not cut.  Based on his examination of photographs taken of Mr. Wilkinson's back, Mr. Curtis states that there was no "vertical line of the alleged F" in the scars on Mr. Wilkinson's back.  *Id.*, p. 27.

Based on the evidence submitted by Mr. Curtis, he denies being a racist or member of the Aryan Family; he disputes Mr. Wilkinson's version of the attack, and disputes statements

REPORT AND RECOMMENDATION            12

1  made by other inmates to Mr. Benda during the investigation.  However, Mr. Curtis has

2  provided no evidence that Mr. Benda fabricated evidence or continued his investigation

3  despite knowing that Mr. Curtis was innocent of a hate crime.  Mr. Curtis has provided no

4  evidence that Mr. Benda "used investigative techniques that were so coercive and abusive that

5  they knew or should have known that those techniques would yield false information.

6

7       Mr. Curtis provided the court with his interpretation of various exhibits and proffers

8  his conclusions as facts.  For example, Plaintiff cites to the deposition of Defendant Benda

9  (taken in Mr. Wilkinson's lawsuit), where Defendant Benda stated that he saw Mr.

10  Wilkinson's injuries when they were fresh.  Mr. Curtis then points to a statement in the

11  investigative report where Defendant Benda identifies that he first contacted Mr. Wilkinson

12  with a Clallam County Sheriff's deputy an hour after the assault.  Mr. Curtis then draws the

13  conclusion that this is proof that Defendant Benda contacted Mr. Wilkinson before the

14  Clallam County Sheriff's Deputy arrived.   Dkt. 111, p. 13.

15

16       Mr. Curtis hypothesizes that Mr. Benda had a motive for coming after him.  In August

17  2002, Mr. Curtis refused to participate in an interview with Mr. Benda regarding an

18  investigation of Mr. Curtis' attempt to introduce contraband into the facility.  When Mr.

19  Curtis refused the interview, Mr. Benda responded by saying "Alright Caveman."  Dkt. 112,

20  pp. 5-6.  However, the evidence proffered by Mr. Curtis confirms that his alias is "Cave

21  Man," and that on August 27, 2002, he was placed in administrative segregation on the

22  referral of correctional specialist, Steve Winters, based on information received by Mr.

23  Winters that Mr. Curtis was attempting to introduce contraband into the facility.  Dkt. 112-2,

24  pp. 2, 22-26.

25

26

REPORT AND RECOMMENDATION                                                                      13

1  Mr. Curtis cites to the deposition testimony of Mr. Wilkinson and hypothesizes that a
2  physician assistant (who is not a party to his lawsuit) and "possibly others", conspired with
3  Defendant Benda in doctoring Mr. Wilkinson's injuries with a marker, pencil or nail polish.
4  Dkt. 111-2, pp. 23-26.  Mr. Curtis apparently reached this opinion based on his conclusion
5  that the full letter "F" does not appear in the photographs taken of Mr. Wilkinson's back
6  following the assault and because Ms. Ellis interrupted C/O Brown when he was
7  photographing Mr. Wilkinson immediately following the assault:

> Wilkinson deposed that he was taken to medical after the assault occurred; that he was put in waist chains and sat on a medical table; that C/O Brown was taking pictures and pouring water on his arms; that after huddling with the Sgt. CBCC's Physician Assistant, Ms. Phyllis Ellis, came in the room and informed C/O Brown thus: "Don't worry about him.  I got him.  I'll do it."

Dkt. 111-2, pp. 25-26.

From these facts, Mr. Curtis concludes that Mr. Wilkinson's injuries had been cosmetically altered and that Ms. Ellis and others were concerned that C/O Brown would begin pouring water down Wilkinson's back and "thereby cause Wilkinson's cosmetically doctored injuries to run, smear, blur, fade or otherwise disappear or distort."  Dkt. 111-2, p. 26.

There are numerous examples where Mr. Curtis points to selected "facts," which he opines are true and then invites to court to engage in his "plausible inferences" to conclude that Defendant Benda fabricated evidence in order to frame him.  *See* Dkt. 111, p. 23 ("Plaintiff hypothesizes that Def. Benda actually interviewed Brady sometime between 11/1/02 and 11/5/02…"); p. 27 ("These facts support the plausible inference that Def. Benda absolved Kyllo of conspiring to commit assaults, and recommended his release from

segregation"); pp. 28-29 ("[T]he statement that Kyllo had been an acquaintance of plaintiff's for three years is false; that that it is more than less likely that Kyllo would make such a false claim when he had a motive to do so …".)

*See also,* Dkt. 111, pp. 30, 35, 39, 41, 42, 43, 44, 45, 50, 51, 53, 56, 58, 60, 64, 72, 75, 76, 77, 81, and 82. Plaintiff's "plausible inferences," however, do not create genuine issues of material fact.

Speculations and conclusory allegations cannot preclude summary judgment. "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). This type of bare speculation and conclusory allegation does not create a genuine issue of material fact supported by evidence. *See Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir.1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002).

While Mr. Curtis has pointed to what he believes are discrepancies in Defendant Benda's reports, a careless or inaccurate investigation that does not ensure an error-free result does not rise to the level of a constitutional violation. *Devereaux*, 263 F.3d at 1076-77; see also *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir.2003).

Although *Devereaux* and *Gausvik* dealt with police investigations of child abuse, they are instructive. In *Gausvik*, the evidence revealed that a police officer investigating allegations of child abuse inaccurately stated in his probable cause affidavit that the children tested "positive" for child abuse (when the tests were only "suggestive" or "consistent" with child abuse) and incorrectly stated that eight children accused the plaintiff of child abuse when, in fact, only two had positively identified him. 345 F.3d at 817. The Ninth Circuit held that although the affidavit "may have been careless or inaccurate," it did not show that the officer continued the investigation despite knowing that plaintiff was innocent. *Id*. Qualified immunity was therefore appropriate on the falsification-of-evidence claim. *Id*.

Likewise, in *Devereaux*, a foster father was investigated and prosecuted for alleged sexual abuse of foster children living in his home. 263 F.3d at 1073. The detective investigating the case employed aggressive interviewing techniques, including lengthy interviews of young children. *Id*. at 1073. Some of the children initially denied abuse, but when questioned further ultimately accused Devereaux of abusing them. *Id*. at 1077. The use of these techniques did not satisfy the second prong, *i.e*, techniques that the investigator knew or should have known would yield false information. The Ninth Circuit upheld the district court's grant of qualified immunity, holding that plaintiff did not have a right to an error-free child abuse investigation. *Id*. at 1075-77.

Here, Mr. Curtis asks the court to assume that because he disagrees with statements made by the victim and other individuals interviewed during the course of Defendant Benda's investigation, that Defendant Benda deliberately fabricated evidence against him. Even assuming as true, for example Mr. Curtis's statements that he is not a racist and that the "F"

1  carved into Mr. Wilkinson's back was incomplete, Mr. Curtis has not raised a material issue
2  of fact as to whether Defendant Benda deliberately fabricated evidence that Mr. Curtis's
3  assault on Mr. Wilkinson was racially motivated or gang related.  The evidence also does not
4  support an inference that Defendant Benda "doctored" Mr. Wilkinson's wounds or that he
5  induced others to make false statements during the investigation.
6
7       The focus of the court's inquiry is whether Defendant Benda's investigative
8  techniques were so coercive and abusive that he knew or should have known that those
9  techniques would yield false information.  The undisputed facts before the court are that the
10 initials "AF" were cut into the victim's back and that those initials stand for Aryan Family.
11 While the vertical line of the "F" may not have resulted in scarring, it is clear that the attempt
12 to cut those two letters into the victim's back was in fact made.  It is undisputed that the
13 Aryan Family is a prison gang.
14
15      It is also clear that the victim made several statements immediately following the
16 incident that infer a racial motivation for the attack.  For example, Mr. Wilkinson was
17 interviewed by Deputy Murphy on October 13, 2001 (the date of the assault) at 1305 in the
18 CBCC Medical Unit.  Deputy Murphy's report contains the following summary:
19
> Wilkenson stated that he was advised that there were visitors at CBCC to see
> him.  He was on the ground floor and proceeded to his cell to prepare for the
> visit.  He entered his cell and left the door partially open.  He put on a different
> shirt, and unfastened his pants so he could tuck his shirt in.  Wilkenson stated
> that while his pants were down, two inmates came into his cell and closed the
> door behind them.  Wilkenson stated that Curtis was carrying some type of a
> black thing that looked like a weapon.  Curtis drew the weapon back and said to
> Wilkenson, "this is for telling on a white boy, nigger."

Dkt. 112-6, Exh. E, pp. 5-6.

Mr. Curtis has presented no credible evidence to support his claim. Rather, he presents testimony of inmates who now dispute statements attributed to them by Mr. Benda. There is no evidence before the court, however, to support the conclusion that Mr. Benda used either coercive or abusive investigative techniques which he knew or should have known would yield false information.

Accordingly, even if Mr. Curtis's allegations are taken as true, and all inferences are construed in his favor, he fails to demonstrate a constitutional violation on this record. When the facts as alleged do not support a constitutional violation, the qualified immunity analysis ceases. Such is the case here.

*CONCLUSION*

Based in the foregoing, the undersigned recommends that that Defendants Benda and Riley's Motion for Summary Judgment based on absolute immunity be **DENIED** and that Defendant Benda's Motion for Summary Judgment based on qualified immunity be **GRANTED** and that Plaintiff's claims against Defendant Benda be **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 23, 2010**, as noted in the caption.

DATED this 1st day of July, 2010.

Karen L. Strombom
United States Magistrate Judge