1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES EDWARD CURTIS,<br><br>                              Plaintiff,<br><br>     v.<br><br>WILLIAM E. RILEY,<br><br>                              Defendant. | No. 08-5109 BHS/KLS<br><br>ORDER DENYING MOTION FOR RULE 56(d) CONTINUANCE |

Before the Court is Plaintiff's motion for discovery and continuance of Defendant's

motion for summary judgment pursuant to Fed. R. Civ. P. 56(d).  ECF No. 212.  For the reasons

stated below, the Court finds that the motion should be denied.

**PROCEDURAL BACKGROUND**

Over four years ago, Plaintiff James Edward Curtis filed this civil rights lawsuit

against Defendants Terry Benda and William Riley.  ECF No. 4.  He amended his complaint

over three years ago on April 20, 2009.  ECF No. 44.  On September 8, 2009, the Court entered

an order staying all discovery in this case pending resolution of Defendants' motion for summary

judgment based on absolute and qualified immunity.  ECF No. 74.  The Court concluded that a

stay was appropriate "[g]iven the early stages of this litigation – an amended complaint was just

filed four months hence and the amount of discovery already propounded and anticipated . . . ."

*Id.* at 4.

ORDER  - 1

At the time the Court stayed discovery, Plaintiff had submitted over 200 requests for production of documents, 25 interrogatories with numerous subparts, and 314 requests for admission to the Defendants.  ECF No. 64, Exh. 1.  In addition, Plaintiff had filed Motions for Orders enjoining the Clerk to serve subpoenas, which included document production requests on the Washington State Attorney General, Rob McKenna and Eldon Vail as Secretary of Washington's Department of Corrections.  ECF Nos. 59 and 60; ECF No. 64, Exh. 2.

According to the Declaration of Sara J. Olson, Assistant Attorney General, these proposed subpoenas contained contain requests for 169 categories of documents.  ECF No. 64, Exh. 2.  The discovery requests outnumber requests submitted in any of the 57 other cases currently being litigated by the assistant attorney general in this case, including cases raising multiple constitutional issues at multiple correctional institutions throughout the state. *Id.* Defendants had responded to all 202 requests for production and also responded to nine of the interrogatories, including all subparts.  ECF No. 64, Exh. 1.

Defendants' first motion for summary judgment, based on qualified and absolute immunity, was originally noted for October 30, 2009.  ECF No. 82.  Plaintiff was granted two extensions of time to respond to the first motion for summary judgment.  ECF Nos. 90 and 102.  On March 2, 2010, Plaintiff moved for a continuance, pursuant to former Fed. R. Civ. P. 56(f), so that he could depose Tim Davis, the former Clallam County Prosecuting Attorney.  ECF No. 103.  That motion was denied on March 8, 2010.  ECF No. 105.  The Court found that there was no need for discovery, at that time, on the issues absolute immunity as to both Defendants and qualified immunity as to Defendant Benda.  *Id.,* p. 5.

On October 6, 2010, the Court entered judgment in favor of Defendant Terry J. Benda, finding that Defendant Benda was entitled to qualified immunity and dismissed all claims against

ORDER  - 2

him with prejudice.  ECF No. 134.  The Court denied Defendants' first motion for summary judgment as to absolute immunity for both Defendants Benda and Riley.  *Id*.

On December 8, 2010, Plaintiff filed a motion to re-open discovery.  ECF No. 147.  That motion was denied.  ECF No. 154.  On December 15, 2010, Defendant Riley filed a second motion for summary judgment based on qualified immunity.  ECF No. 148.  The Court granted two requests by Plaintiff to extend his time to respond to the motion.  ECF Nos. 155 and 160.

On April 12, 2011, Plaintiff again moved for a continuance, pursuant to former Fed. R. Civ. P. 56(f), so that he could depose Tim Davis, the former Clallam County Prosecuting Attorney.  ECF No. 163.  Plaintiff argued that Mr. Davis's deposition was essential to his opposition to Defendant Riley's motion for summary judgment because Defendant Riley's qualified immunity defense raises a factual question as to whether Defendant Riley's allegedly fabricated evidence was used by Mr. Davis to charge and/or prosecute Mr. Curtis. He further argued that such deposition testimony, along with the recently discovered material, will:

> … . conclusively show that [Mr. Davis] charged Plaintiff with the gang-related enhancement at mainly Defendant Riley's behest, and that Defendant Riley knowingly and intentionally provided [Mr. Davis] his affidavit containing the fabricated evidence in the midst of the criminal prosecution, intending and believing Mr. Davis would use said evidence in rebuttal to influence the jury's decision.

ECF No. 163, p. 3.

On May 9, 2011, the Court granted Plaintiff's motion to extend the discovery deadline until June 9, 2011 for the sole purpose of allowing Plaintiff to take the deposition of Tim Davis. The Court also struck the noting date of Defendant Riley's motion for summary judgment, stating that at the expiration of the new discovery deadline, Defendant Riley could either file an amended motion for summary judgment or simply renew his motion.  ECF No. 167.

ORDER - 3

On May 10, 2011, Plaintiff moved to amend his complaint a second time.  ECF No. 170. The Court denied the motion.  ECF No. 182.  On August 2, 2011, Defendant Riley re-filed his motion for summary judgment based on qualified immunity.  ECF No. 191.  It was noted for August 26, 2011.  On August 18, 2011, Robert Strohmeyer appeared on behalf of Plaintiff and filed a motion for extension of time to respond to the motion for summary judgment.  ECF No. 193.  That motion was granted.  ECF No. 198.  A subsequent joint motion for extension (ECF No. 199) on October 25, 2011 was granted.  ECF No. 202.   Two more motions for extensions (ECF Nos. 203 and 205) were granted.  ECF Nos. 204 and 206.

The present noting date for Defendant Riley's motion for summary judgment was April 27, 2012.  In the meantime, however, Mr. Strohmeyer moved to withdraw as counsel for Plaintiff.  ECF No. 207.  Before he withdrew, Mr. Strohmeyer filed the motion for a discovery continuance at issue.  ECF No. 212.   Defendant Riley is opposed to any further discovery or continuance.  ECF No. 235.

## SUMMARY OF FACTS

On October 13, 2002, Plaintiff James Edward Curtis, a white male, along with another white male inmate (Steven Eggers), assaulted James Wilkinson, a fellow inmate, who is an African-American male.  ECF No. 44, at 8-9 (Plaintiff's Amended Complaint).  While Mr. Curtis struggled with the victim, Mr. Wilkinson, Mr. Eggers used a razor to carve the initials "A" and "F" into Mr. Wilkinson's back.  ECF No. 191-1 (Davis Dep., 145:19 - 146:11 at Exhibit 1 (Certification for Probable Cause)).

Mr. Curtis admits that he assaulted Mr. Wilkinson.  ECF No. 44, pp. 7-8.  However, he asserts that he was compelled by threat of force to participate in the assault, the assault was not gang related or racially motivated, and therefore, the assault charge against him should not have

ORDER  - 4

included the alleged aggravating circumstances.  He alleges that Mr. Riley fabricated evidence during his investigation that Mr. Curtis was part of the Aryan Family and used this evidence to support the inclusion of the aggravating circumstances of the assault charge.  If the aggravating circumstances had been proven at trial, Mr. Curtis could have been subjected to a harsher sentence than that allowed by the standard sentencing range.

Specifically, Mr. Curtis alleges that Defendant Riley obtained a personal letter that Mr. Curtis "reportedly wrote to a friend (i.e., Larry Kisinger)" that ended with the closing, "Always & Forever."  According to Mr. Curtis, Defendant Riley then coerced several known Aryan Family members, who are also controlled informants, to write and close their letters using the words "Always & Forever," and then referenced this "fabricated evidence" of Mr. Curtis' gang affiliation in a written statement provided to the Clallam County Sheriff's Office.  ECF No. 44-2, pp. 32-35. [1]

On December 3, 2004, a Criminal Information was filed charging Mr. Curtis with Assault in the Second Degree While Armed with a Deadly Weapon (RCW 9A.36.021(a)(a) or (1)(c)).  The complaint also included the charge that the "crime was aggravated by the following circumstances:  (1) the crime was gang-related, and/or (2) the crime was racially motivated."  ECF No. 191-1, at 30 (Criminal Information).  *Id.*  The Certification for Probable Cause attached to the Criminal Information was signed by Terry Benda, Investigator.  Mr. Benda states that "[b]ased upon statements made by the attackers it appeared that the assault was racially motivated.  The victim reported that one of his assailants made the statement that "This is for

---

[1] Plaintiff references his proposed Second Amended Complaint (referred to as SAC).  Plaintiff's motion to file a Second Amended Complaint was denied.  ECF No. 182.  He relies, however, on a statement in Judge Settle's Order that the Court will entertain a second motion to amend in the event Mr. Curtis submits evidence of a conspiracy. ECF No. 212, at 6 *citing* ECF No. 194, at 2.  No second motion to amend has been filed.  Claims outside of Plaintiff's First Amended Complaint will not be considered in determining whether a continuance of Defendant's motion for summary judgment will be granted to allow discovery and if so, what discovery is relevant to the claims stated in this case.

ORDER - 5

snitching on the white boy, nigger."  The carving on Wilkenson's back appeared to have been

'A' and 'F,' believed to represent the words Aryan Family."  ECF No. 191-1, at 29.

Mr. Curtis took the deposition of Tim Davis on June 2, 2011.  ECF No. 191-1 (Davis

Dep.).  Mr. Davis has no recollection of communicating with Defendant Riley at all before he

filed the criminal charges, including the gang-related/racial motivation enhancement charge,

against Mr. Curtis.  ECF No. 191-1 (Davis Dep. 69:1 – 70:16).  According to Mr. Davis, he only

communicated with Department of Corrections' employees Terry Benda and Steve Winters and

detectives from the Clallam County Prosecutor's Office prior to filing the charges against Mr.

Curtis.  *Id.* (Davis Dep. 69:1 – 73:13, 83:18 – 85: 11, 88:7 – 89:3).   Mr. Davis does not recall

discussing the case with Mr. Riley until "months" after the charges against Mr. Curtis had been

filed.  *Id.* (Davis Dep. 69:10–11, 192:23–26).  Almost one year after the criminal charges were

filed against Mr. Curtis and well after the prosecution had decided *not* to pursue the gang-

related/racial motivation enhancement, Mr. Davis communicated by email with Mr. Riley

regarding Mr. Curtis' discovery requests.  *Id.* (Davis Dep. 191:24 – 192:19; Davis Dep. Exhibits

10 and 11).

During the course of Mr. Davis' communications with Defendant Riley, an unsigned and

undated letter and unsigned and undated affidavit were prepared.  It is believed that these were

prepared by Defendant Riley.  The affidavit was never filed with the Clallam County Superior

Court.  According to Mr. Davis, the documents were not used in making the decision to charge

Mr. Curtis with the gang-related/racial motivation enhancement charge or to further the

prosecution against him.  *Id.* (Davis Dep. 183:15–23, 192:2–26, Exhibits 12 and 13).  Mr. Davis

does not recall having contact with Mr. Riley at the time that the gang-related/racial motivation

enhancement was charged.  He did not receive any evidence from Mr. Riley that he knew was

ORDER  - 6

false with the intention of presenting that evidence to the jury.  The gang-related/racial

motivation enhancement was dropped because the Department of Corrections' Intelligence and

Investigation Unit representatives did not want to disclose confidential information regarding

their informants to the Court and the public record.  *Id.* (Davis Dep. 193: 17-26).

All charges against Plaintiff were subsequently dropped by the Clallam County

Prosecutor's Office.  *Id.* (Davis Dep. 194:1–3).  Plaintiff was not convicted of Assault in the

Second Degree.  *Id.* (Davis Dep. 194:4–8).

## DISCUSSION

**A.     Rule 56(d) Continuance**

Rule 56(d) of the Federal Rules of Civil Procedure provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it
cannot present facts essential to justify its opposition, the court may:

(1)  defer considering the motion or deny it;

(2)  allow time to obtain affidavits or declarations or to take discovery; or

(3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d) (formerly subdivision (f)).

Cases interpreting former subdivision (f), make clear that a party seeking a continuance

under Rule 56 must demonstrate that there are specific facts he hopes to discover if granted a

continuance that will raise a genuine issue of material fact.  *Harris v. Duty Free Shoppers Ltd.*

*Partnership*, 940 F.2d 1272, 1276 (9th Cir.1991); *Carpenter v. Universal Star Shipping, S.A.*,

924 F.2d 1539, 1547 (9th Cir.1991).  "The burden is on the party seeking to conduct additional

discovery to put forth sufficient facts to show that the evidence sought exists."  *Volk v. D.A.*

*Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir.1987).  *See also Tatum v. City and County of San*

*Francisco*, 441 F.3d 1090, 1100 (9th Cir.2006); *California v. Campbell*, 138 F.3d 772, 779 (9th

ORDER  - 7

Cir. 1998) (party opposing on Rule 56(f) grounds needs to state the specific facts he hopes to elicit from further discovery, that the facts sought exist and that the sought-after facts are essential to resisting the summary judgment motion); *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306 n. 1 (9th Cir.1986) (holding that the party opposing summary judgment "has the burden under Rule 56(f) to show what facts he hopes to discover to raise an issue of material fact"). Of course, pro se pleadings are to be construed liberally. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976) (pro se complaints, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers").

**B.     Qualified Immunity and Plaintiff's Due Process Claim**

A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful. *Pearson, et al. v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009); *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2155 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The test for qualified immunity is an objective test requiring the Plaintiff to prove a reasonable official could not believe his actions were constitutional. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993); *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 537 (1991).

There is a "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001). Under the Fourteenth Amendment, there exists a "right not to be deprived of liberty without due process

ORDER  - 8

of law, or more specifically, as the result of the fabrication of evidence by a government officer

acting in an investigative capacity." *See, e.g., Ricciuti v. New York City Transit Auth*., 124 F.3d

123, 130 (2d Cir.1997) ("When a police officer creates false information likely to influence a

jury's decision and forwards that information to prosecutors, he violates the accused's

constitutional right to a fair trial ....").

To support a claim for deliberate fabrication of evidence, Mr. Curtis must, at a

minimum, produce evidence that supports at least one of the following propositions: (1)

Defendant Riley continued his investigation of Mr. Curtis despite the fact that he knew or

should have known that Mr. Curtis was innocent; and (2) Defendant Riley used investigative

techniques that were so coercive and abusive that he knew or should have known those

techniques would yield false information. *Devereaux*, 263 F.3d at 1076. *Devereaux* also

recognizes that improprieties in conducting a criminal investigation cannot support a due

process claim based on an improper criminal prosecution unless the improprieties actually

impact the prosecution:

> Because this coercive technique did not, on Devereaux's theory of the facts, yield
> any false testimony even though it was applied to an especially vulnerable
> witness, it can hardly serve as a basis for a claim that Defendants violated
> Devereaux's rights by using techniques that they knew or should have known
> would yield false information.

*Id.*, at 1078. It is certainly possible that the provision of false information to the prosecutor

and/or jury could deprive a criminal defendant of his liberty and/or his right to a fair trial.

However, where the fabricated evidence does not result in a deprivation of liberty or property

interest because there are independent reasons to find probable cause for the plaintiff's arrest,

there is no violation of a constitutional right. *See Hennick v. Bowling,* 115 F.Supp.2d 1204, 1208

(W.D.Wash. 2000) (citing *Tomer v. Gates,* 118 F.2d 1240, 1242 (9th Cir. 1987). Where there is

ORDER - 9

an independent reason to find probable cause for a plaintiff's arrest, then the most that can be said of the provision of the false evidence is that "it had the potential to, but did not, impinge on plaintiffs' constitutionally protected rights." *Id.* at 1209.   Moreover, "[t]o the extent that defendants' conduct caused other forms of injury, such as extra defense costs, injury to reputation, prosecution with malice, emotional distress, etc., such injuries are not of constitutional dimension and cannot form the basis of a § 1983 claim." *Id.*

C.    **Plaintiff's Proposed Discovery**

Plaintiff's motion is 109 pages long.  He has submitted over 1200 pages of exhibits.  In short, he asks to be allowed to conduct discovery, including the depositions of Mr. Riley, twenty-four other named persons, the "yet unidentified informants, alleged Aryan Family gang members, and mailroom officers," so that he may prove that Defendant Riley fabricated evidence to show that Mr. Curtis is or was a member of the Aryan Family when, in fact, he is not and never has been.  ECF No. 212, at 12.  Mr. Curtis contends that this discovery is vital to show that Mr. Riley fabricated the contention that the mailroom received a letter that Mr. Curtis wrote and closed with the expression "Always and Forever" and then, either personally or in conspiracy with others, Mr. Riley induced inmates "doubling as Aryan Family gang members" to write and close their personal letters using the same expression.  *Id.*, at 6.  In this way, Mr. Riley was presumably able to use this fabricated evidence to validate Plaintiff as an Aryan Family gang member – which Mr. Curtis disputes – and then Mr. Riley "relayed this information to the Clallam County Prosecutor's Office *and/or* Prosecutor Davis in order to procure a gang-related assault charge against Plaintiff, and/or influence the jury's decision in the criminal trial he thought Plaintiff was going to be put through."  *Id.*, at 7.

ORDER  - 10

Mr. Curtis sought and was granted leave to depose the prosecutor in his criminal case. However, contrary to what Mr. Curtis thought would be established through this deposition, Mr. Davis did <u>not</u> testify that he charged Mr. Curtis with the gang-related enhancement "mainly at Defendant Riley's behest". In fact, Mr. Curtis testified that he had already charged Mr. Curtis with the gang-related/racially motivated enhancement months before he ever spoke with Defendant Riley.

The Certification for Probable Cause attached to the Criminal Information filed on December 3, 2004, which includes the gang-related/racially motivated enhancement, was signed by Terry Benda, Investigator. Mr. Benda states that "[b]ased upon statements made by the attackers it appeared that the assault was racially motivated. The victim reported that one of his assailants made the statement that "This is for snitching on the white boy, nigger." The carving on Wilkenson's back appeared to have been 'A' and 'F', believed to represent the words Aryan Family." ECF No. 191-1, at 29. There are no statements by Defendant Riley contained within the charging documents. Assuming *arguendo,* that the unsigned and undated letter and affidavit prepared by Mr. Riley contained false information, Mr. Davis testified that he had no reason to believe that they contained false information and that in any event, he never used them in any criminal prosecution against Mr. Curtis. Mr. Davis does not recall having contact with Mr. Riley at the time that the gang-related/racially motivated enhancement was charged, he did not receive any evidence from Mr. Riley that he knew was false with the intention of presenting that evidence to the jury, and the charges against Mr. Curtis were dropped because the Department of Corrections' Intelligence and Investigation Unit representatives did not want to disclose confidential information regarding their informants to the Court and the public record. ECF No. 191-1 (Davis Dep. 193: 17-26).

ORDER - 11

1

2

Therefore, the discovery sought by Plaintiff will not aid him in proving his claim against Defendant Riley.

3

Accordingly, it is **ORDERED:**

4

5

(1)     Plaintiff's Motion for Continuance Pursuant to Fed. R. Civ. P. 56(d) (ECF No. 212) is **DENIED.**

6

7

8

(2)     The Clerk shall send copies of this Order to Plaintiff and to counsel for Defendant.

9

10

**DATED** this  23rd   day of July, 2012.

11

12

Karen L. Strombom
United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER  - 12