1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

JAMES EDWARD CURTIS,

                Plaintiff,

    v.

WILLIAM E. RILEY,

                Defendant.

NO. C08-5109 BHS/KLS

**REPORT AND
RECOMMENDATION
NOTED FOR:  AUGUST 10, 2012**

      Before the Court is Defendant Riley's Motion for Summary Judgment Based on Qualified Immunity.  ECF No. 191.  This motion was originally filed on August 2, 2011.  *Id.* Although Plaintiff has been granted numerous continuances, he failed to file a response to the motion.  His failure to do so may be viewed by the Court as an admission that Defendant Riley's motion has merit.  CR 7(b)(2).

      Having reviewed the motion, supporting affidavits and evidence, and Plaintiff's sworn amended complaint, the undersigned finds that Plaintiff's claims against Defendant William E. Riley should be dismissed.

**PROCEDURAL BACKGROUND**

      Over four years ago, Plaintiff James Edward Curtis filed this civil rights lawsuit against Defendants Terry Benda and William Riley.  ECF No. 4.  He amended his complaint over three years ago on April 20, 2009.  ECF No. 44.  On September 8, 2009, the Court entered an order staying all discovery pending resolution of Defendants' motion for summary judgment based on absolute and qualified immunity.  ECF No. 74.  The Court concluded that a

REPORT AND RECOMMENDATION - 1

1    stay was appropriate "[g]iven the early stages of this litigation – an amended complaint was

2    just filed four months hence and the amount of discovery already propounded and anticipated .

3    . . ." *Id.* at 4.

4          At the time the Court stayed discovery, Plaintiff had submitted over 200 requests

5    for production of documents, 25 interrogatories with numerous subparts, and 314 requests for

6    admission to the Defendants.  ECF No. 64, Exh. 1.  In addition, Plaintiff had filed Motions for

7    Orders enjoining the Clerk to serve subpoenas, which included document production requests

8    on the Washington State Attorney General, Rob McKenna and Eldon Vail as Secretary of

9    Washington's Department of Corrections.  ECF Nos. 59 and 60; ECF No. 64, Exh. 2.

10         According to the Declaration of Sara J. Olson, Assistant Attorney General, these

11    proposed subpoenas contained contain requests for 169 categories of documents.  ECF No. 64,

12    Exh. 2.  The discovery requests outnumber requests submitted in any of the 57 other cases

13    currently being litigated by the assistant attorney general in this case, including cases raising

14    multiple constitutional issues at multiple correctional institutions throughout the state. *Id.*

15    Defendants had responded to all 202 requests for production and also responded to nine of the

16    interrogatories, including all subparts.  ECF No. 64, Exh. 1.

17         Defendants' first motion for summary judgment, based on qualified and absolute

18    immunity, was originally noted for October 30, 2009.  ECF No. 82.  Plaintiff was granted two

19    extensions of time to respond to the first motion for summary judgment.  ECF Nos. 90 and

20    102.  On March 2, 2010, Plaintiff moved for a continuance, pursuant to former Fed. R. Civ. P.

21    56(f), so that he could depose Tim Davis, the former Clallam County Prosecuting Attorney.

22    ECF No. 103.  That motion was denied on March 8, 2010.  ECF No. 105.  The Court found

REPORT AND RECOMMENDATION - 2

1   that there was no need for discovery, at that time, on the issues absolute immunity as to both

2   Defendants and qualified immunity as to Defendant Benda.  *Id.,* p. 5.

3          On October 6, 2010, the Court entered judgment in favor of Defendant Terry J. Benda,

4   finding that Defendant Benda was entitled to qualified immunity and dismissed all claims

5   against him with prejudice.  ECF No. 134.  The Court denied Defendants' first motion for

6   summary judgment as to absolute immunity for both Defendants Benda and Riley.  *Id.*

7

8          On December 8, 2010, Plaintiff filed a motion to re-open discovery.  ECF No. 147.

9   That motion was denied.  ECF No. 154.  On December 15, 2010, Defendant Riley filed a

10  second motion for summary judgment based on qualified immunity.  ECF No. 148.  The Court

11  granted two requests by Plaintiff to extend his time to respond to the motion.  ECF Nos. 155

12  and 160.

13         On April 12, 2011, Plaintiff again moved for a continuance, pursuant to former Fed. R.

14  Civ. P. 56(f), so that he could depose Tim Davis, the former Clallam County Prosecuting

15

16  Attorney.   ECF No. 163.  In support of his motion, Mr. Curtis submitted documents he

17  obtained in February 2011 from a fellow inmate, who obtained them through a public records

18  request. ECF No. 165.  The documents included an undated memorandum purportedly from

19  Timothy Davis to an unnamed individual, which states in part:

20

21          At the early stages, the former boss of I&I (Steve Winters) and DOC's Bill
            Riley, their prison gang guru were both involved in getting this one filed with

22          all the enhancements possible. Each had an agenda, at times conflicting perhaps.
            All in all, it was a mistake to have followed their requests (Riley more than

23          Winters, who just wanted to get it charged).

24          …

25          At the outset this was charged with an enhancement for gang related and also

26

REPORT AND RECOMMENDATION - 3

> racial motivation (Riley and Winters).  His extensive discovery requests, some
> of which DOC did not want to deal with (though I have heard that the AG office
> supplied the requested information and documents that we had rejected when a
> PDR was sent in) resulted in the scales falling from my eyes and the dropping
> of those aggravators in favor of the straight Assault 2.

ECF No. 165, p. 20.

Plaintiff argued that Mr. Davis's deposition was essential to his opposition to Defendant Riley's motion for summary judgment because Defendant Riley's qualified immunity defense raises a factual question as to whether Defendant Riley's allegedly fabricated evidence was used by Mr. Davis to charge and/or prosecute Mr. Curtis.  He further argued that such deposition testimony, along with the recently discovered material, will:

> … . conclusively show that [Mr. Davis] charged Plaintiff with the gang-related
> enhancement at mainly Defendant Riley's behest, and that Defendant Riley
> knowingly and intentionally provided [Mr. Davis] his affidavit containing the
> fabricated evidence in the midst of the criminal prosecution, intending and
> believing Mr. Davis would use said evidence in rebuttal to influence the jury's
> decision.

ECF No. 163, p. 3.

On May 9, 2011, the Court granted Plaintiff's motion to extend the discovery deadline until June 9, 2011 for the sole purpose of allowing Plaintiff to take the deposition of Tim Davis.  The Court also struck the noting date of Defendant Riley's motion for summary judgment, stating that at the expiration of the new discovery deadline, Defendant Riley could either file an amended motion for summary judgment or simply renew his motion.  ECF No. 167.

On May 10, 2011, Plaintiff moved to amend his complaint a second time.  ECF No. 170.  The Court denied the motion.  ECF No. 182.  On August 2, 2011, Defendant Riley re-filed his motion for summary judgment based on qualified immunity.  ECF No. 191.  It was

REPORT AND RECOMMENDATION - 4

noted for August 26, 2011.  On August 18, 2011, Robert Strohmeyer appeared on behalf of

Plaintiff and filed a motion for extension of time to respond to the motion for summary

judgment.  ECF No. 193.  That motion was granted.  ECF No. 198.  A subsequent joint motion

for extension (ECF No. 199) on October 25, 2011 was granted.  ECF No. 202.   Two more

motions for extensions (ECF Nos. 203 and 205) were granted.  ECF Nos. 204 and 206.

The latest noting date for Defendant Riley's motion for summary judgment was April

27, 2012.  ECF No. 206.  Before the motion could be considered, however, Mr. Strohmeyer

filed a motion to withdraw as counsel for Plaintiff.  ECF No. 207.  Before he withdrew, Mr.

Strohmeyer filed another motion for discovery and continuance of Defendants' motion for

summary judgment.  ECF No. 212.  Plaintiff's motion was 109 pages long with over 1200

pages of exhibits.  Plaintiff sought to depose Defendant Riley and twenty-four other named

persons, the "yet unidentified informants, alleged Aryan Family gang members, and mailroom

officers," so that he may prove that Defendant Riley fabricated evidence to show that Mr.

Curtis is or was a member of the Aryan Family when, in fact, he is not and never has been.

ECF No. 212, at 12.  The Court denied that motion.  Defendant Riley's motion for summary

judgment is, therefore, ripe for consideration.


**FACTS**

On October 13, 2002, Plaintiff James Edward Curtis, a white male, along with another

white male inmate (Steven Eggers), assaulted James Wilkinson, a fellow inmate, who is an

African-American male.  ECF No. 44, at 8-9 (Plaintiff's Amended Complaint).  While Mr.

Curtis struggled with the victim, Mr. Wilkinson, Mr. Eggers used a razor to carve the initials

1    "A" and "F" into Mr. Wilkinson's back.  ECF No. 191-1 (Davis Dep., 145:19 - 146:11 at

2    Exhibit 1 (Certification for Probable Cause)).

3            Mr. Curtis admits that he assaulted Mr. Wilkinson.  ECF No. 44, pp. 7-8.  However, he

4    asserts that he was compelled by threat of force to participate in the assault, the assault was

5    not gang related or racially motivated, and therefore, the assault charge against him should not

6    have included the alleged aggravating circumstances.  He alleges that Mr. Riley fabricated

7    evidence during his investigation, which evidence was used to support the inclusion of the

8    aggravating circumstances of the assault charge.  If the aggravating circumstances had been

9    proven at trial, Mr. Curtis could have been subjected to a harsher sentence than that allowed

10   by the standard sentencing range.

11           Specifically, Mr. Curtis alleges that Defendant Riley obtained a personal letter that Mr.

12   Curtis "reportedly wrote to a friend (i.e., Larry Kisinger)" that ended with the closing, "Always

13   & Forever."  According to Mr. Curtis, Defendant Riley then coerced several known Aryan

14   Family members, who are also controlled informants, to write and close their letters using the

15   words "Always & Forever," and then referenced this "fabricated evidence" of Mr. Curtis' gang

16   affiliation in a written statement provided to the Clallam County Sheriff's Office.  ECF No. 44-

17   2, pp. 32-35.

18           On December 3, 2004, a Criminal Information was filed charging Mr. Curtis with

19   Assault in the Second Degree While Armed with a Deadly Weapon (RCW 9A.36.021(a)(a) or

20   (1)(c)).  The complaint also included the charge that the "crime was aggravated by the

21   following circumstances:  (1) the crime was gang-related, and/or (2) the crime was racially

22   motivated."  ECF No. 191-1, at 30 (Criminal Information).  *Id.*  The Certification for Probable

1    Cause attached to the Criminal Information was signed by Terry Benda, Investigator.  Mr.

2    Benda states that "[b]ased upon statements made by the attackers it appeared that the assault

3    was racially motivated.  The victim reported that one of his assailants made the statement that

4    "This is for snitching on the white boy, nigger."  The carving on Wilkenson's back appeared

5    to have been 'A' and 'F', believed to represent the words Aryan Family."  ECF No. 191-1, at

6    29.

7

8        Former Prosecuting Attorney Tim Davis has no recollection of communicating with

9    Defendant Riley at all before he filed the criminal charges, including the gang-related/racial

10    motivation enhancement charge, against Mr. Curtis.  ECF No. 191-1 (Davis Dep. 69:1 –

11    70:16).  Mr. Davis testified in his deposition that he communicated with Department of

12    Corrections' employees Terry Benda and Steve Winters and detectives from the Clallam

13    County Prosecutor's Office prior to filing the charges against Mr. Curtis.  *Id.* (Davis Dep. 69:1

14    – 73:13, 83:18 – 85: 11, 88:7 – 89:3).   Mr. Davis does not recall discussing the case with Mr.

15    Riley until "months" after the charges against Mr. Curtis had been filed.  *Id.* (Davis Dep.

16    69:10–11, 192:23–26).  Almost one year after the criminal charges were filed against Mr.

17    Curtis and well after the prosecution had decided *not* to pursue the gang-related/racial

18    motivation enhancement, Mr. Davis communicated by email with Mr. Riley regarding Mr.

19    Curtis' discovery requests.  *Id.* (Davis Dep. 191:24 – 192:19; Davis Dep. Exhibits 10 and 11).

20

21        During the course of Mr. Davis' communications with Defendant Riley, an unsigned

22    affidavit was prepared.  ECF No. 191-1, at 36-28.  Within the affidavit, Defendant Riley

23    opines that Mr. Curtis has been associated with the Aryan Family in the past.  He based this

24    opinion on the statements of "numerous Confidential Informants", a $20,000.00 transaction

25

26

1   between Mr. Curtis and an Aryan Family associated offender; a letter between two Aryan

2   Family members dated June 12, 2003 discussing Mr. Curtis's membership status. Mr. Curtis's

3   letter signed with the closing of "Always and Forever," and Defendant Curtis's attempt to

4   debrief on March 11, 2002 and a follow up interview on March 15, 2004, in which Mr. Curtis

5   spoke of various Aryan Family members that he knew and gave some information regarding

6   their activities.  *Id.*

7

8          According to Mr. Davis, the affidavit was never filed with the Clallam County

9   Superior Court, it was not used in making the decision to charge Mr. Curtis with the gang-

10  related/racial motivation enhancement charge or to further the prosecution against him.  *Id.*

11  (Davis Dep. 183:15–23, 192:2–26, Exhibits 12 and 13).  Mr. Davis also testified that he did

12  not receive any evidence from Mr. Riley that he knew was false with the intention of

13  presenting that evidence to the jury.  The gang-related/racial motivation enhancement was

14  eventually dropped because the Department of Corrections' Intelligence and Investigation

15  Unit representatives did not want to disclose confidential information regarding their

16  informants to the Court and the public record.  *Id.* (Davis Dep. 193: 17-26).

17

18         All charges against Mr. Curtis were subsequently dropped by the Clallam County

19  Prosecutor's Office.  *Id.* (Davis Dep. 194:1–3).  Mr. Curtis was not convicted of Assault in the

20  Second Degree.  *Id.* (Davis Dep. 194:4–8).

21         Mr. Curtis's sole claim against Defendant Riley, as set forth in his Amended

22

23  Complaint, is as follows:

24         Upon information and belief, Defendant Riley reportedly obtained a
         letter I reportedly wrote to a friend (i.e. Larry Kisinger) and ended with the
25       closing "Always & Forever," and then he, directly or indirectly, proceeded to
         have certain Aryan Family gang members who are also, upon information and

26

REPORT AND RECOMMENDATION - 8

1

2

belief, controlled informants write and close their own personal letters with the closing Always & Forever, thus fabricating documentary evidence of my alleged affiliation with the Aryan Family gang.

3

4

5

6

Defendant Riley referenced this fabricated evidence of my gang affiliation in a written statement he provided to the Clallam County Sheriff's Office in the course of said Office's criminal investigation of the assault on Wilkinson, intending and knowing it would be used against me in the criminal proceedings.

7

ECF No. 44-21, at 34-35.

8

**SUMMARY JUDGMENT STANDARD**

9

10

Summary judgment pursuant to Fed.R.Civ.P. 56(a) avoids unnecessary trials in cases

with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of*

11

*Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). At issue is "whether the evidence presents a

12

13

sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52,

14

15

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 serves to screen the latter cases from those

16

which actually require resolution of genuine disputes over facts material to the outcome of the

17

case; e.g., issues that can only be determined through presentation of testimony and evidence at

18

trial such as credibility determinations of conflicting testimony over dispositive facts.

19

20

By clarifying what the non-moving party must do to withstand a motion for summary

judgment, the Supreme Court has increased the utility of summary judgment. First, the Court

21

has made clear that if the non-moving party will bear the burden of proof at trial as to an

22

23

element essential to its case, and that party fails to make a showing sufficient to establish a

genuine dispute of fact with respect to the existence of that element, then summary judgment is

24

25

appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

26

REPORT AND RECOMMENDATION - 9

1    (1986).  Second, to withstand a motion for summary judgment, the non-moving party must

2    show that there are "genuine factual issues that properly can be resolved only by a finder of

3    fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty*

4    *Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added).  Finally,

5    if the factual context makes the non-moving party's claim implausible, that party must come

6    forward with more persuasive evidence than would otherwise be necessary to show that there

7    is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

8    106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  No longer can it be argued that any disagreement

9    about a material issue of fact precludes the use of summary judgment.  *California Arch. Bldg.*

10   *Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006

11   (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine issue as to

12   material fact," if the non-moving party "fails to make a showing sufficient to establish the

13   existence of an element essential to that party's case, and on which that party will bear the

14   burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th

15   Cir.1991) (*quoting Celotex*, 477 U.S. at 322).

16        Thus, to overcome summary judgment an opposing party must show a dispute that is

17   both genuine and involving a fact that makes a difference in the outcome.  Two steps are

18   necessary.  First, according to the substantive law, the court must determine what facts are

19   material.  Second, in light of the appropriate standard of proof, the court must determine

20   whether material factual disputes require resolution at trial.  *Id.*, at 248.

21        When the opposing party has the burden of proof on a dispositive issue at trial, the

22   moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan*

*v. National Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).  The

moving party need only point to matters which demonstrate the absence of a genuine material

factual issue.  *See Celotex v. Cattret*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  If the moving party meets its burden, the burden shifts to the opposing party to

establish genuine material factual issues.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

The opposing party must demonstrate that the disputed facts are material, i.e., facts that might

affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W.

Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), and that

disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial,

see *T.W. Elec.*, 809 F.2d at 631.  There can be no genuine issue as to any material fact where

there is a complete failure of proof as to an essential element of the nonmoving party's case

because all other facts are thereby rendered immaterial.  *Celotex*, 477 U.S. at 323.  The

opposing party may not rest upon the pleadings' mere allegations or denials, but must present

evidence of specific disputed facts.  *See Anderson*, 477 U.S. at 248.  Conclusory statements

cannot defeat a properly supported summary judgment motion.  *See Scott v. Rosenberg*, 702

F.2d 1263, 1271-72 (9th Cir.1983).

A verified complaint may be used as an affidavit in opposition to the motion.

*Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir.1995); *McElyea v. Babbitt*, 833 F.2d 196,

197-98 (9th Cir.1987) (per curiam).

The court does not determine witness credibility.  It believes the opposing party's

evidence, and draws inferences most favorably for the opposing party.  *See Anderson,* 477 U.S.

at 249, 255.  Inferences, however, are not drawn out of "thin air," and the proponent must

REPORT AND RECOMMENDATION - 11

1    adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group,*

2    *Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (*citing*

3    *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary

4    judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

5    On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to

6    find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at

7    587 (citation omitted).  In that case, the court must grant summary judgment.

8

9                                          **DISCUSSION**

10            Qualified immunity protects "all but the plainly incompetent or those who knowingly

11   violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

12   Because qualified immunity is an immunity from suit rather than a mere defense to liability,

13   this question should be resolved at the earliest possible stage in litigation.  *See Hunter v.*

14   *Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam); *Mitchell v.*

15   *Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  The qualified immunity

16   inquiry has two parts: whether the facts alleged or shown make out a violation of a

17   constitutional right; and whether the right at issue was "clearly established" at the time of a

18   defendant's alleged misconduct.  See *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150

19   L.Ed.2d 272 (2001).  Courts are permitted to exercise their sound discretion in deciding which

20   of the two prongs of the qualified immunity analysis should be addressed first in light of the

21

22   circumstances in the particular case.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172

23   L.Ed.2d 565 (2009).

24

25            There is a "clearly established constitutional due process right not to be subjected to

26

criminal charges on the basis of false evidence that was deliberately fabricated by the

government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).  Under the

Fourteenth Amendment, there exists a "right not to be deprived of liberty without due process

of law, or more specifically, as the result of the fabrication of evidence by a government

officer acting in an investigative capacity." *See, e.g., Ricciuti v. New York City Transit Auth*.,

124 F.3d 123, 130 (2d Cir.1997) ("When a police officer creates false information likely to

influence a jury's decision and forwards that information to prosecutors, he violates the

accused's constitutional right to a fair trial ....").

To support a claim for deliberate fabrication of evidence, Mr. Curtis must, at a

minimum, produce evidence that supports at least one of the following propositions: (1)

Defendant Riley continued his investigation of Mr. Curtis despite the fact that he knew or

should have known that Mr. Curtis was innocent; and (2) Defendant Riley used investigative

techniques that were so coercive and abusive that he knew or should have known those

techniques would yield false information.  *Devereaux*, 263 F.3d at 1076.  *Devereaux* also

recognizes that improprieties in conducting a criminal investigation cannot support a due

process claim based on an improper criminal prosecution unless the improprieties actually

impact the prosecution:

> Because this coercive technique did not, on Devereaux's theory of the facts,
> yield any false testimony even though it was applied to an especially vulnerable
> witness, it can hardly serve as a basis for a claim that Defendants violated
> Devereaux's rights by using techniques that they knew or should have known
> would yield false information.

*Id.*, at 1078.

REPORT AND RECOMMENDATION - 13

Where the fabricated evidence does not result in a deprivation of liberty or property interest because there are independent reasons to find probable cause for the plaintiff's arrest, there is no violation of a constitutional right. *See Hennick v. Bowling,* 115 F.Supp.2d 1204, 1208 (W.D.Wash. 2000) (citing *Tomer v. Gates,* 118 F.2d 1240, 1242 (9th Cir. 1987) (Where there is an independent reason to find probable cause for a plaintiff's arrest, then the most that can be said of the provision of the false evidence is that "it had the potential to, but did not, impinge on plaintiffs' constitutionally protected rights." *Id.* at 1209. Moreover, "[t]o the extent that defendants' conduct caused other forms of injury, such as extra defense costs, injury to reputation, prosecution with malice, emotional distress, etc., such injuries are not of constitutional dimension and cannot form the basis of a § 1983 claim." *Id.*

## A.    First Prong of Due Process Claim (Knowledge of Innocence)

Mr. Curtis must first prove that Defendant Riley knew or should have known that Plaintiff was innocent and that despite this information, continued his investigation. *Devereaux,* 263 F.3d at 1076. As noted above, Mr. Curtis does not claim to be innocent of assaulting Mr. Wilkinson. He claims that the assault was not gang-related and that it was not racially motivated and therefore, he should not have been charged with the enhancement.

The undisputed evidence shows that the decision to add a gang-related and/or racial motivation enhancement to the charge was not based on the information contained in the unsigned affidavit of Defendant Riley. ECF No. 191-1 (Davis Dep. 183:15–23, 192:2–26). In fact, the manner in which the assault occurred created a sufficient and reasonable basis for charging Mr. Curtis with the enhancement of "gang-related and/or racial motivation". *Id.* (Davis Dep. 149:13 - 157:2, 160:4 - 171:13.)

REPORT AND RECOMMENDATION - 14

1    The Certification for Probable Cause attached to the Criminal Information filed on

2  December 3, 2004, which includes the gang-related/racially motivated enhancement, was

3  signed by Terry Benda, Investigator.  Mr. Benda states that "[b]ased upon statements made by

4  the attackers it appeared that the assault was racially motivated.  The victim reported that one

5  of his assailants made the statement that "This is for snitching on the white boy, nigger."  The

6  carving on Wilkenson's back appeared to have been 'A' and 'F', believed to represent the

7  words Aryan Family."  ECF No. 191-1, at 29.

8    As was previously noted by this Court, there is ample undisputed evidence that Mr.

9  Curtis's assault of Mr. Wilkinson was gang-related and/or racially motivated:

> The undisputed facts before the court are that the initials "AF" were cut into the
> victim's back and that those initials stand for Aryan Family.  While the vertical
> line of the "F" may not have resulted in scarring, it is clear that the attempt
> to cut those two letters into the victim's back was in fact made.  It is undisputed
> that the Aryan Family is a prison gang.
>
>     It is also clear that the victim made several statements immediately
> following the incident that infer a racial motivation for the attack.  For example,
> Mr. Wilkinson was interviewed by Deputy Murphy on October 13, 2001 (the
> date of the assault) at 1305 in the CBCC Medical Unit.  Deputy Murphy's
> report contains the following summary:
>
>> Wilkenson stated that he was advised that there were visitors at
>> CBCC to see him.  He was on the ground floor and proceeded to
>> his cell to prepare for the visit.  He entered his cell and left the
>> door partially open.  He put on a different shirt, and unfastened
>> his pants so he could tuck his shirt in.  Wilkenson stated that
>> while his pants were down, two inmates came into his cell and
>> closed the door behind them.  Wilkenson stated that Curtis was
>> carrying some type of a black thing that looked like a weapon.
>> Curtis drew the weapon back and said to Wilkenson, "this is for
>> telling on a white boy, nigger."

Dkt. 112-6, Exh. E, pp. 5-6.

1   　　　There are no statements by Defendant Riley contained within the charging documents.

2   Former Deputy Prosecuting Attorney Tim Davis has no recollection of communicating with

3   Defendant Riley at all before he filed the criminal charges, including the gang-related/racial

4   motivation enhancement charge, against Mr. Curtis.  ECF No. 191-1 (Davis Dep. 69:1 –

5   70:16).  According to Mr. Davis, he only communicated with Terry Benda and Steve Winters

6   and detectives from the Clallam County Prosecutor's Office prior to filing the charges against

7   Mr. Curtis.  *Id.* (Davis Dep. 69:1 – 73:13, 83:18 – 85: 11, 88:7 – 89:3).  Mr. Davis does not

8   recall discussing the case with Mr. Riley until "months" after the charges against Mr. Curtis

9   had been filed.  *Id.* (Davis Dep. 69:10–11, 192:23–26).

10

11   　　　Mr. Davis testified that he had not reason to believe that the information contained in

12   the unsigned affidavit contained false information and that in any event, he never used the

13   affidavit in any criminal prosecution against Mr. Curtis.  Mr. Davis also testified that he did

14   not receive any evidence from Mr. Riley that he knew was false with the intention of

15   presenting that evidence to the jury.  He also denied that the gang-related/racially motivated

16   enhancement was dropped because it was based on fabricated evidence.  He testified that the

17   enhancement was dropped because the Department of Corrections' Intelligence and

18   Investigation Unit representatives did not want to disclose confidential information regarding

19   their informants to the Court and the public record.   ECF No. 191-1 (Davis Dep. 193: 17-26).

20

21   　　　Thus, the undisputed evidence before the Court reflects that Mr. Davis had already

22   charged Mr. Curtis with the gang-related/racially motivated enhancement months before he

23   ever spoke with Defendant Riley, that the prosecution did not use the unsigned declaration

24   allegedly signed by Defendant Riley in determining whether to charge Mr. Curtis with the

25

26

REPORT AND RECOMMENDATION - 16

1  gang-related and/or racial motivation enhancement, and that there were ample reasons,

2  independent of Defendant Riley's investigation, to find probable cause to charge Mr. Curtis

3  with the gang-related and/or racial motivation enhancement.

4  **B.      Second Prong of Due Process Claim (Coercive/Abusive Investigative Techniques)**

5          Mr. Curtis must further show that Defendant Riley used investigative techniques that

6  were so coercive and abusive that he knew or should have known that the techniques would

7

8  yield false information.  *Devereaux*, 263 F.3d at 1076.

9          Mr. Curtis speculates that Defendant Riley intercepted his letter, that Defendant Riley

10  "directly or indirectly" made other unknown Aryan Family gang members fabricate evidence,

11  that other Aryan Family members are Defendant Riley's "controlled informants", and that

12  Defendant Riley used this allegedly fabricated evidence to document his allegedly inaccurate

13  belief that Plaintiff is affiliated with the Aryan Family gang.   However, "[a] plaintiff's belief

14  that a defendant acted from an unlawful motive, without evidence supporting that belief, is no

15  more than speculation or unfounded accusation about whether the defendant really did act

16  from an unlawful motive."  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026,

17  1028 (9th Cir. 2001).  This type of bare speculation and conclusory allegation does not create

18  a genuine issue of material fact supported by evidence.  *See Lujan v. National Wildlife*

19  *Federation*, 497 U.S. 871 (1990).

20

21          Even if the Court were to assume, for purposes of this motion only, that Mr. Curtis's

22

23  unsupported allegations are true, he has still failed to show how Defendant Riley violated his

24  constitutional rights.

25

26

REPORT AND RECOMMENDATION - 17

1

2          First, as noted above, there was ample evidence independent from Defendant Riley's

3    investigation that the attack on Mr. Wilkinson was gang related and/or racially motivated.

4    These include the statements made by Mr. Curtis during the attack, the victim's testimony, the

5    injuries inflicted on the victim, and testimony of other witnesses.  ECF No. 111, Attachment

6    B, Attachment E at 1, Attachment F at 3, Attachment G at 2, 12, and 13, Attachment I at 7,

7    and Exhibit K at 12.

8          Second, it is undisputed that the prosecuting attorney did not use or rely on any

9    statements made by Defendant Riley in determining probable cause or charging Mr. Curtis

10   with the enhancement of committing a racially motivated or gang-related crime.  ECF No.

11   191 (Davis Dep. 189:5–8, 192:23–26, 193:17–26; Davis Dep. Exhibits 1, 3, 12, and 13).  Nor

12   did the prosecution rely on Defendant Riley to proceed with the prosecution or eventually, to

13   drop the gang-related or racial motivation enhancement.  *Id.* (Davis Dep. 193: 17-26).

14

15         Therefore, even if the Court assumes that Defendant Riley conspired with other DOC

16   employees, the Clallam County Sheriff's Department, other Aryan Family members, the

17   victim of the assault, and/or the prosecuting attorney in putting forward the false information

18   that Mr. Curtis was a member of the Aryan Family at the time of the assault, such fabrication

19   did not result in any constitutional deprivation because it did not affect the decision to charge

20   him, did not affect the continuance of the prosecution, and in fact, did not affect the reason the

21   charges against him were ultimately dropped.  See *Devereaux,* 264 F.3d at 1078

22

23   (improprieties in criminal investigation cannot support a due process claim based on an

24   improper criminal prosecution unless the improprieties actually impact the prosecution); see

25   also, *Hennick,* 115 F.Supp.2d at 1209 (Where there is an independent reason to find probable

26

REPORT AND RECOMMENDATION - 18

1    cause for a plaintiff's arrest, then the most that can be said of the provision of the false

2    evidence is that "it had the potential to, but did not, impinge on plaintiffs' constitutionally

3    protected rights.")

4          Mr. Curtis has failed to support his claim for deliberate fabrication of evidence against

5    Defendant Riley.  In the absence of a constitutional violation, Defendant Riley is entitled to

6    qualified immunity as a matter of law.

7

8                                          **CONCLUSION**

9          Based on the foregoing, the undersigned recommends that Defendant Riley is entitled

10   to qualified immunity, that his motion for summary judgment (ECF No. 191) be **GRANTED**

11   and that all of Plaintiff's claims against Defendant Riley be **dismissed with prejudice.**

12         Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

13   Procedure, the parties shall have fourteen (14) days from service of this Report to file written

14   objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of

15   those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).

16   Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter

17   for consideration on **August 10, 2012**, as noted in the caption.

18

19         **DATED** this  23rd   day of July, 2012.

20

21

22                                          Karen L. Strombom
                                            United States Magistrate Judge
23

24

25

26

REPORT AND RECOMMENDATION - 19